**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**JACKILYN A. MIXON,**

                                    Plaintiff,                10-CV-1043A(Sr)

v.

**BUFFALO MEDICAL GROUP, P.C.,**

                                    Defendant.

---

**REPORT, RECOMMENDATION AND ORDER**

This matter was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #20.

Plaintiff Jackilyn A. Mixon brought this action on December 23, 2010, against defendant Buffalo Medical Group, P.C. ("BMG") for declarative relief and damages based on allegations of employment discrimination in violation of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq*. ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. 620 *et seq.*, ("ADEA"). Pending for report and recommendation is BMG's motion for summary judgment seeking dismissal of the complaint in its entirety. Dkt. #11. Upon consideration of the record as a whole, including the parties' written submissions and oral arguments, it is recommended that the defendant's motion for summary judgment be granted.

**BACKGROUND**

The following background facts[1] are undisputed. Plaintiff is an African American, born on October 1, 1953. She was employed by BMG for nearly twenty years, from September 1988 until her discharge in June 2008, at age 54.

Throughout the course of her employment at BMG, plaintiff worked as a Claims Representative[2] in BMG's Central Billing Office. Her duties primarily involved handling insurance billing claims on accounts receivable for medical services provided by BMG. For several years prior to the termination of her employment with BMG, plaintiff was assigned accounts involving workers' compensation and no-fault insurance claims, along with one other Claims Representative, Jill Frey. Dkt. #16 (Defendant's Local Rule 56(a) Statement), ¶¶ 1, 4-6.

Over the years, plaintiff received periodic evaluations from several different supervisors commenting on her need to improve her work performance in certain areas. For example, in August 2001, plaintiff was issued an "Employee Counseling Statement" signed by her supervisor at the time, Rosemary Campisano, containing a "Written Warning" regarding a reported incident of "[m]alicious conduct toward co-workers" which resulted in plaintiff's ineligibility for a pay-for-performance bonus. Dkt. #15 (Decl. of Karen Welch), Ex. E, p. 2. Soon thereafter, Ms. Campisano submitted a performance evaluation for plaintiff, dated September 24, 2001, indicating deficiencies in the areas of "Punctuality"

---

[1] The facts set forth in the text are adapted from the pleadings and the materials submitted in connection with this motion, including declarations, discovery materials, and the parties' Local Rule 56(a) statements. *See* Local Rule Civ. P. 56(a)(1), (2) (W.D.N.Y., effective Jan. 1, 2012).

[2] The Claims Representative position was reclassified in 2007 under the job title "Physicians' Representative," at a higher pay grade.

and "Working Relations with Others and Supervisor," with specific reference to the prior Written Warning and resulting bonus ineligibility as demonstrating plaintiff's "[n]eed[ ] to work on improving her tolerance towards co-workers …." Dkt. #15, Ex. A, p. 2.

On May 19, 2003, plaintiff received a "WORKERS COMP / NO FAULT REP" review form indicating the need for improvement in six of the ten listed areas of performance. Dkt. #15, Ex. B, p. 2. The form was signed by plaintiff's supervisor Dennis Hesch, and also listed Sandy Just and Kristy Musilli as plaintiff's supervisors. Specific comments noted plaintiff's tendency "to debate the amount and type of work given to her instead of just completing the tasks assigned;" leaving work late resulting in unapproved overtime; and "being confrontational when she feels that her workload is not equal to her co-workers and when she feels that another co-worker is making a derogatory comment about her." *Id.* at p. 3. On September 6, 2003, plaintiff's supervisor Kristy Musilli performed a follow-up evaluation which indicated that plaintiff's performance had improved in most areas, but was still deficient in the areas of punctuality and tracking/reporting specific payor issues. *See* Dkt. #15, Ex. C.

In September 2006, Leslie Crawshaw (now Leslie Rosselli) was hired by defendant as manager of the billing department, and became plaintiff's direct supervisor. Ms. Crawshaw reported to Carly Aliff, the Director of BMG's Central Business Office, who had been plaintiff's supervisor for an interim period before Ms. Crawshaw was hired. On January 5, 2007, Ms. Crawshaw and Ms. Aliff signed an evaluation form indicating that plaintiff met expectations in all areas of performance. *See* Dkt. #15, Ex. D; Dkt. #16, ¶¶ 9-11.

During 2007, however, Ms. Crawshaw observed several deficiencies in plaintiff's job performance, and brought these observations to Ms. Aliff's attention. *See* Dkt. #13 (Decl. Of Carly Aliff), ¶ 4. On November 19, 2007, Ms. Crawshaw "spent the morning with [plaintiff] watching and listening to her workflow …," and prepared a detailed note of "observations for improvement and faster output." Dkt. #14 (Decl. Of Leslie Rosselli), Ex. C, p. 2. Ms. Crawshaw's note reflects her impressions regarding plaintiff's problems with (among other things) organizing her mail; understanding account information; documenting account activity to facilitate follow-through; and excessive time on the telephone with patients. *Id.* at pp. 2-3.

On March 17, 2008, Ms. Crawshaw issued an Employee Counseling Statement to plaintiff containing the following "Verbal Warning:"

> You have had numerous conversations with your supervisors on topics ranging from workflow, working the charge review queue, the timeclock and your accounts. After these conversations your performance remains poor.
>
> As a seasoned Physician Representative with almost 20 years of experience you have demonstrated a lack of initiative when it comes to solving related work problems that are presented to you. Going forward it is expected that you will take the lead and exhaust all avenues to solve a work-related issue. If you are unable to solve the problem you need to bring it to the attention of your supervisor.

Dkt. #14, Ex. D, p. 2. The statement also noted that "[a] written warning would make [her] ineligible for the next Pay for Performance bonus and [she] could not job post on any open position for six months." *Id.* Plaintiff refused to sign the statement acknowledging receipt and understanding of "the consequences for further incidences." *Id.*

On May 15, 2008, Ms. Crawshaw issued a further Employee Counseling Statement containing the following Written Warning:

> You were issued a Verbal Warning on March 19, 2008 for unsatisfactory performance. Since the issuance of the Verbal Warning your job performance remains poor. You still are not responding to supervisor requests to discuss accounts, you still are not responding to account issues in a timely manner and you still demonstrate difficulty in getting through day-to-day tasks.

Dkt. #14, Ex. E, p. 2. Plaintiff again refused to sign the statement.

Following the issuance of these warnings, plaintiff met with Karen Welch, BMG's Director of Human Resources, on May 19, 2008 to discuss what plaintiff perceived as an unfair workload allocation between herself and Jill Frey, the other Physicians' Representative assigned to workers compensation and no-fault claims. Upon reviewing the matter with Ms. Crawshaw and Ms. Aliff, Ms. Welch found no evidence of unfair workload allocation, and agreed with their joint recommendation to terminate plaintiff's employment for poor job performance. *See* Dkt #16, ¶¶ 16-18. Plaintiff was then issued a final Employee Counseling Statement notifying her that she had been terminated from employment effective June 27, 2008. Dkt. #14, Ex. F.

As alleged in the complaint (Dkt. #1, ¶ 7), plaintiff filed an administrative charge with the New York State Division of Human Rights ("NYSDHR") on April 17, 2009, alleging discrimination in employment based on race, age, and retaliation, in violation of Article 15 of the New York State Human Rights Law. NYSDHR cross-filed the charge with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII and the ADEA. On May 19, 2010, NYSDHR made a finding of "No Probable Cause," and on September 28, 2010, the EEOC issued a "Dismissal and Notice of Rights."[3]

---

[3] None of the documents pertaining to these administrative filings and determinations have been made part of the record in this case.

Plaintiff filed this action on December 23, 2010, alleging that she was assigned a heavier workload than Caucasian employees, was subjected to unreasonable criticism by her supervisors, and was ultimately discharged because of her race and age, in violation of Title VII and the ADEA. Dkt. #1, ¶¶ 29-33; 36-38. She also claims that she complained about this discriminatory treatment during her meeting with Ms. Welch in May 2008, and was subsequently discharged in retaliation for engaging in the protected activity of opposing discrimination. *Id.* at ¶ 41-45.

Following discovery and an unsuccessful attempt at mediation, BMG moved for summary judgment seeking dismissal of the complaint in its entirety. Oral argument of the motion was heard by the undersigned on July 24, 2012, and decision was reserved. For the reasons that follow, it is respectfully recommended that defendant's motion be granted.

## **DISCUSSION AND ANALYSIS**

**Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged. *See, e.g., Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 311 n. 7 (S.D.N.Y. 2011); Fed. R. Civ. P. 56, Committee's notes to 2010 amendments.

Under those standards, the moving party bears the initial burden of establishing that no genuine issue of material fact exists. *Rockland Exposition, Inc. v. Great American*

*Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 F. App'x 387 (2d Cir. 2011). A fact is considered to be "material" only if it "might affect the outcome of the suit under the governing law . . . ," and a dispute regarding a material fact is considered to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Bryant v Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991). Should the moving party meet this burden, "the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). The party seeking to defeat a motion for summary judgment "must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

The court's role in ruling on a summary judgment motion is not to resolve issues of fact, but rather to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In making this determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162,167 (2d Cir. 1991). When "little or no evidence may be found in support of the nonmoving party's case . . . [and] no rational jury could find in favor of the nonmoving party because the evidence to support its

case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Resid. Servs., L.P.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

The Second Circuit has also held that, when deciding whether summary judgment should be granted in an employment discrimination case, the court "must take additional considerations into account." *Desir v. City of New York*, 453 F. App'x 30, 33 (2d Cir. 2011) (citing *Gallo*, 22 F.3d at 1224). As stated in *Gallo*:

> A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue. Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.

*Gallo*, 22 F.3d at 1224. Nonetheless, summary judgment remains appropriate in discrimination cases, as "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to … other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *see also Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."), *cert. denied*, 534 U.S. 993 (2001); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (affirming grant of summary judgment in favor of employer based on plaintiff's failure to produce evidence of pretext), *cert. denied*, 540 U.S. 811 (2003).

In support of its motion for summary judgment in this case, BMG asserts that:

1. Plaintiff has failed to meet her burden at the final step of the analytical burden-shifting framework established in *McDonnell Douglas v. Corp. v. Green* to come forward with sufficient evidence to support a rational finding that defendant's legitimate, non-discriminatory reason for terminating plaintiff's employment was a pretext for discrimination.

2. Plaintiff has produced no evidence of retaliation for engaging in protected activity.

Each of these grounds is addressed in turn.

**Burden-Shifting Under McDonnell Douglas**

Plaintiff's claims of employment discrimination under both Title VII and the ADEA are analyzed under the three-step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Dixon v. International Federation of Accountants*, 416 F. App'x 107, 109 (2d Cir. 2011) (applying *McDonnell Douglas* burden-shifting framework to employment discrimination claims brought under Title VII and ADEA); *Chakraborty v. Town of Amherst, N.Y.*, 2012 WL 268155, at *3 (W.D.N.Y. Jan. 30, 2012) (same); *Webb v. Niagara County*, 2012 WL 5499647, at *2-3 (W.D.N.Y. Nov. 12, 2012) (applying "modified version" *McDonnell Douglas* test to claims of retaliation under Title VII and ADEA). Under this framework, plaintiff must first establish a *prima facie* case of discrimination by demonstrating that: (1) she was in a protected group; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d

128, 137–38 (2d Cir. 2003); *Collins v. N.Y. City Trans. Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).

Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. In other words, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal quotation marks omitted).

Upon the defendant's proffer of a legitimate non-discriminatory reason for its employment action, "the presumption of discrimination arising with the *prima facie* case drops from the picture … [and] the plaintiff must then establish that the defendant's proffered reason is a mere pretext for actual discrimination." *Weinstock*, 224 F.3d at 42 (citing *St. Mary's Honor Ctr.*, 509 U.S. at 510–11); *see also Fisher v. Vassar Coll.*, 114 F.3d 1332, 1336 (2d Cir. 1997), *cert. denied*, 522 U.S. 1075 (1998). To demonstrate pretext:

> The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action. In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.

*Weinstock*, 224 F.3d at 42 (internal quotation marks, citations, and alterations omitted).

The focus of defendant's position, as set forth in its written submissions and as articulated at oral argument, is that plaintiff cannot meet her burden at the final step of the

*McDonnell Douglas* analysis to come forward with sufficient evidence to support a rational finding that defendant's legitimate nondiscriminatory reason for terminating her employment – poor job performance – is a pretext for race or age discrimination. Plaintiff responds that there is sufficient circumstantial evidence of both race and age discrimination to create genuine issues of material fact for the jury.

For example, plaintiff maintains that she was assigned a larger workload than her younger, Caucasian co-worker, Jill Frey. However, she can point to no evidence, circumstantial or otherwise, to give rise to a reasonable inference in support of this allegation. To the contrary, the record reveals that the workers compensation and no-fault account files were divided between plaintiff and Ms. Frey on the basis of the first letter of the self-insured employers' name. During the relevant time period, plaintiff was assigned accounts for employers whose names began with the letters A through L (numbering twelve), and Ms. Frey had the responsibility for M through Z (numbering fourteen). Dkt. #12-3 (Pltff. Dep.), pp. 32-36. There is nothing in the record before the court, beyond plaintiff's mere speculation as reflected in the allegations of her complaint, to suggest that this method of dividing the work resulted in a disproportionately larger burden for plaintiff, or that it was in any way based on plaintiff's age or race.

Indeed, when specifically asked at her deposition about the basis for her disproportionate workload claim, plaintiff testified as follows:

> Q. Did you know the - - how do you know the workload of the other claims representatives?
>
> A. I don't.
>
> Q. So I mean was it just your perception that you had more work than they did?

A. It was my opinion that I had as much work as they did.

*Id.* at p. 26. Drawing all rational inferences from this testimony in plaintiff's favor, the best argument to be made on plaintiff's behalf is that she was working under the perception that the accounts were being assigned to her and Ms. Frey (her younger Caucasian co-worker) on an equal basis, but somehow later came to the understanding that she was being assigned a disproportionately larger number of accounts than Ms. Frey.

It is well settled that an employee's unsupported subjective belief that she was being discriminated against is insufficient to establish that the employer's articulated legitimate reason for its employment action is a pretext for illegal discrimination. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (holding that a plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination") (internal quotation marks and alterations omitted), *cert. denied*, 530 U.S. 1242 (2000); *Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir. 1991) (subjective belief of discrimination cannot be the basis for judicial relief); *Wado v. Xerox Corp.*, 991 F. Supp. 174, 203 (W.D.N.Y. 1998) ("Feelings [of discrimination] are not evidence."), *aff'd*, 196 F.3d 358 (2d Cir. 1999). In the absence of some affirmative showing by plaintiff that she was being assigned a disproportionate number of accounts to work on, or that the assignments were being made on the basis of plaintiff's race or age, plaintiff's conclusory allegations of unequal workload provide no basis for a reasonable jury to find that BMG's legitimate reason for terminating her employment was a pretext for discrimination.

Plaintiff also contends that a reasonable inference of pretext can be drawn from the fact that she worked at BMG for nearly twenty years, during which time she received

satisfactory performance evaluations, qualified for grade increases and pay raises, and trained new claims representatives (including Ms. Frey), yet she was discharged within a relatively short time after Ms. Crawshaw became her supervisor. Plaintiff cites *Morales v. Merit System Protection Board*, 932 F.2d 800 (9th Cir. 1991), in which the plaintiff was discharged from his civilian position with the United States Air Force "after twenty-eight years of faithful service," on the basis of a series of incidents that took place within a three-week period closely following his threat to file an administrative unfair treatment charge. *Id.* at 803. The court in *Morales* found that this circumstantial evidence, considered along with the direct evidence of plaintiff's administrative hearing testimony, if believed, was "of sufficient quantum and quality to create a genuine issue of material fact" precluding summary judgment in favor of the defendant. *Id.* (internal quotation marks and citations omitted); *see also Pearse v. Interstate Brands Corp.*, 1995 WL 250447, at *4 (E.D.La. Apr. 26, 1995) ("A long history of good performance followed by a precipitous decline in performance is suggestive of pretext.").

In this case, however, the undisputed facts are that plaintiff received evaluations, employee counseling statements, and warnings of deficient job performance from no less than three other supervisors over the course of several years prior to Ms. Crawshaw's becoming her supervisor in September 2006. Ms. Crawshaw (along with Ms. Aliff) gave plaintiff a satisfactory evaluation in January 2007, but by the end of the year had observed and noted several deficiencies in plaintiff's work performance, including continuing problems with punctuality; failure to complete tasks and follow through on a timely basis; inefficient use of time; and inadequate documentation of her work on account files. Ms. Crawshaw counseled plaintiff with regard to these deficiencies on several occasions in an

effort to help her improve her performance. When no improvement was observed, Ms. Crawshaw issued plaintiff a verbal warning in March 2008, and a written warning in May 2008. Following these two warnings, and with no improvement in plaintiff's performance, Ms. Crawshaw consulted with her supervisor (Ms. Aliff) and the Director of Human Resources (Ms. Welch), and the decision was made to terminate plaintiff's employment.

Based on these undisputed facts, and in the absence of any evidence beyond plaintiff's conjecture and surmise to support a rational inference of pretext, no reasonable juror could conclude that defendant's legitimate, non-discriminatory reason for terminating plaintiff's employment – namely, her failure to address identified deficiencies in the performance of her job duties despite repeated verbal and written warnings of the consequences – was false, and that discrimination on the basis of race or age was the real reason. Accordingly, the Court finds that plaintiff has failed to come forward with evidence "of sufficient quantum and quality to create a genuine issue of material fact" that would preclude granting summary judgment in favor of BMG at the final step of the *McDonnell Douglas* analysis.

**Retaliation**

Plaintiff claims that she was discharged in retaliation for complaining to Ms. Welch, during their meeting in May 2008, about being assigned a disproportionately heavy workload and other unfair treatment at the hands of her supervisor, Ms. Crawshaw. Retaliation claims brought under Title VII and ADEA are evaluated by applying the same *McDonnell-Douglas* burden shifting framework that applies to discrimination claims. *See*

*Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011), *cert. denied*, ___U.S.___, 132 S.Ct. 1744 (2012); *Terry*, 336 F.3d at 141.

> First, the plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. The plaintiff's burden in this regard is *de minimis* and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive. If the plaintiff sustains this initial burden, a presumption of retaliation arises. The defendant must then articulate a legitimate, non-retaliatory reason for the adverse employment action. If so, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action.

*Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks and citations omitted).

BMG contends that plaintiff's retaliation claim fails at the *prima facie* stage because she cannot show that she engaged in a protected activity. In this regard, courts within the Second Circuit have consistently held that the term "protected activity" refers to action taken by the employee to protest or oppose statutorily prohibited discrimination. *Cruz v. Coach Stores*, 202 F.3d 560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-3); *see also Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134-35 (2d Cir.), *cert. denied*, 528 U.S. 964 (1999); *Aspilaire v. Wyeth Pharmaceuticals, Inc.*, 612 F. Supp. 2d 289, 308 (S.D.N.Y. 2009). Generalized complaints of unfair or unequal treatment are not considered to be protected activity because they do not put the employer on sufficient notice that the plaintiff's complaint was directed at conduct prohibited by federal anti-discrimination laws. *See Rojas*, 660 F.3d at 108; *Galdieri–Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ("[I]mplicit in the requirement that the employer have

been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's [complaint] was directed at conduct prohibited by Title VII."). Rather, "[t]o be actionable, the unfair treatment must be due to one's membership in a protected class and the complaint must make that point sufficiently clear." *Ramos v. City of New York*, 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997).

In *Rojas*, the plaintiff claimed that she was discharged from her employment with the Roman Catholic Diocese of Rochester in retaliation for complaining to her supervisors that she was being sexually harassed by the pastor of the parish she worked at. She alleged that she told her supervisors prior to her termination that the pastor was "making [her] life miserable" and that the supervisor "need[ed] to do something." The district court dismissed the retaliation claim, finding that the plaintiff failed to establish a *prima facie* case of retaliation because, "[f]rom this vague complaint, [the employer] could not reasonably have understood that she was complaining of conduct prohibited by Title VII." *Rojas v. Roman Catholic Diocese of Rochester*, 783 F. Supp. 2d 381, 413 (W.D.N.Y. 2010) (Siragusa, J.). The Second Circuit affirmed, finding that the "competent evidence in the record" showed that the plaintiff's complaints about the pastor's conduct were "generalized" and therefore could not have provided a basis for the employer to reasonably understand that she was complaining of sexual harassment. *Rojas*, 660 F.3d at 108. The Circuit Court further stated:

> Moreover, the District Court concluded that the [employer]'s proffered reason for [the plaintiff]'s termination (that she had stopped coming to work) was legitimate, nonretaliatory, and nonpretextual. Given the state of the record, the District Court did not err in dismissing [the plaintiff]'s retaliation claims.

*Id.* (citing *Rojas*, 738 F. Supp. 2d at 412-13); *see also Moncrief v. New York Public Library*, 2007 WL 2398808, at *6 (S.D.N.Y. Aug. 17, 2007) (granting summary judgment to employer dismissing claim of retaliation for sending an email "bereft of any talk about discrimination at all and thus can not be deemed a protected activity."), *aff'd*, 343 F. App'x 627 (2d Cir. 2009); *Foster v. Humane Soc'y of Rochester and Monroe Cnty., Inc.*, 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (mere fact that plaintiff used term "hostile environment" in email to supervisor not enough to show that she engaged in protected activity; "court must look at the substance of her complaint, not the terminology that she used.").

Similarly, the competent evidence of record in this case reveals that any complaints plaintiff made to Ms. Welch during their May 2008 meeting, or at any time prior to plaintiff's discharge in June 2008, were "generalized" complaints of unequal or unfair treatment in the workplace, not approaching the level of "participation in a protected activity" necessary to establish a *prima facie* case of retaliation under Title VII or the ADEA. *Hicks*, 593 F.3d at 164. When questioned under oath during her deposition regarding the substance of her conversations with Ms. Welch, plaintiff testified as follows:

> Q. And what were - - what did you say to her and what did she reply?
>
> A. I went to her and I was - - to discuss the volume of work.
>
> Q. You didn't discuss - - but you still thought the work was unevenly allocated?
>
> A. Yes.
>
> * * *
>
> Q. And what did she say?

> A. I don't remember the exact words, but she said I needed to get with Leslie Crawshaw, and did I have any complaints about Leslie Crawshaw, and I said, "No, I'm here because of the work."
>
> Q. So you didn't have - - you didn't give her any complaints about Leslie Crawshaw when you met with her?
>
> A. I did not bring Leslie Crawshaw's name up, Ms. Welch did.
>
> Q. Did you - - at any of these meetings with Ms. Welch, did you ever say that you thought you were being treated differently because of or discriminatorily because of your age or your race?
>
> A. I was concerned about keeping my job because I needed my job. No, I did not use any of those terms.

Dkt. #12-3, pp. 62-64. As this testimony makes clear, the substance of plaintiff's complaint to Ms. Welch was directed at what plaintiff perceived to be an unequal distribution of the workload, with no further information to provide a reasonable basis for Ms. Welch to have understood that plaintiff was complaining about discrimination because of her race or age. While somewhat less "vague" than the employee complaint at issue in *Rojas*, this Court cannot find that plaintiff's complaint to Ms. Welch about unfair treatment constitutes sufficient evidence of participation in a protected activity to establish a *prima facie* case of retaliation.

Furthermore, as in *Rojas*, even if the evidence in the summary judgment record could be considered sufficient to meet plaintiff's *prima facie* burden, this Court has already determined that defendant's proffered reasons for discharging plaintiff were legitimate, nonretaliatory, and nonpretextual. Under the analytical framework outlined above, and "[g]iven the state of the record" presented on this motion, *Rojas*, 660 F.3d at 108, this determination provides an additional basis for entry of summary judgment in defendant's

favor dismissing plaintiff's claim that she was discharged in retaliation for her complaints about conduct prohibited by Title VII or the ADEA.

Based on this review of the record as a whole, the Court concludes that no reasonable jury could find in favor of plaintiff on any of her claims for relief under Title VII or the ADEA. Accordingly, there is no genuine issue of material fact for trial and a grant of summary judgment in favor of defendant is appropriate.

## **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that defendant's motion for summary judgment (Dkt. #11), be GRANTED in its entirety, and that plaintiff's complaint be dismissed.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), and Local Rule 72.

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, any written objections this Report and Recommendation "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection, and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection*.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to plaintiff and to counsel for defendants.

**SO ORDERED.**

DATED:    Buffalo, New York
          January 28, 2013

                                                   s/ H. Kenneth Schroeder, Jr.
                                                   **H. KENNETH SCHROEDER, JR.**
                                                   **United States Magistrate Judge**